IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| SYLVIA A.,[1] § <br> §<br> Plaintiff, § <br> §<br> v. § <br> §<br> KILOLO KIJAKAZI, § <br> Acting Commissioner of Social Security,[2] § <br> §<br> Defendant. § | CIVIL ACTION NO. 5:21-CV-076-M-BQ |

**FINDINGS, CONCLUSIONS, AND**
**RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant Acting Commissioner of Social Security's (Defendant) partial Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and brief in support. ECF No. 11. Through the motion, Defendant also seeks an extension of time in which to file an answer and certified administrative record. *Id.* at 13. Plaintiff Sylvia A. filed her response opposing Defendant's request for partial dismissal. ECF No. 12. Defendant did not file a reply, but she filed a "Notice of Supplemental Authority" after the reply deadline. ECF No. 13. The motion is now ripe for decision. After review of the motion and applicable law, the undersigned recommends that the United States District Judge **DENY** Defendant's Motion to Dismiss. The undersigned further recommends that the district judge **GRANT** Defendant's request for an extension of time and permit Defendant fourteen days from the date of any order adopting these findings, conclusions, and recommendation to file an answer and certified administrative record.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies Plaintiff only by first name and last initial.

[2] In accordance with Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi, who became Acting Commissioner of Social Security on July 9, 2021, is substituted for Andrew Saul as Defendant in this action.

I. **Background**

In her Complaint, Plaintiff contends that "[p]ursuant to *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020), the office of Commissioner of Social Security is unconstitutional, as the President does not have removal power and the Social Security Administration is exempt from budget limitations, placing the agency wholly outside of the President's control." Compl. 2, ECF No. 1. Plaintiff alleges that because "the Commissioner's office is unconstitutional, the [Administrative Law Judges (ALJ)] are not constitutionally appointed," and she is "entitled to a new hearing with a constitutionally appointed ALJ." *Id.*

The Commissioner filed the instant Rule 12(b)(1) Motion to Dismiss arguing that Plaintiff lacks Article III standing to assert the foregoing constitutional claim. Def.'s Mot. 1, ECF No. 11.

II. **Legal Standard**

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under Article III of the Constitution, they possess "jurisdiction only over cases and controversies." *Williams v. Parker*, 843 F.3d 617, 620 (5th Cir. 2016) (internal quotation marks omitted) (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). Without a case or controversy, a plaintiff does not have standing to sue in federal court. *Id.* (citing *Raines*, 521 U.S. at 818). "Standing is a threshold issue that [courts] consider before examining the merits." *Id.* (citation omitted).

"A motion to dismiss for lack of Article III standing is properly considered under Rule 12(b)(1)." *Higgins v. Tex. Dep't of Health Servs.*, 801 F. Supp. 2d 541, 547 (W.D. Tex. 2011) (citing *Harold H. Higgins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011)). "The party responding to the 12(b)(1) motion bears the burden of" establishing the court's subject matter jurisdiction. *Wilson v. Hous. Cmty. Coll. Sys.*, 955 F.3d 490, 494 (5th Cir. 2020). "A district court

may find a lack of subject matter jurisdiction on either: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* at 494–95 (internal quotation marks omitted); *see Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("For purposes of ruling on a motion to dismiss for want of standing," the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.").

To establish standing, a plaintiff must, at a minimum, prove three elements: (1) "an injury in fact" (2) that is "fairly traceable to the challenged action of the defendant" and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks, alterations, and citations omitted); *Williams*, 843 F.3d at 620. "The triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement . . . ." *Williams*, 843 F.3d at 621 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998)). "If the party invoking federal jurisdiction fails to establish any one of injury in fact, causation, or redressability, then federal courts cannot hear the suit." *Id.* (citation omitted).

### III.   Discussion

Plaintiff's constitutional separation-of-powers challenge is premised on the Supreme Court's recent decision in *Seila Law*. Compl. 2. In *Seila Law*, the Consumer Financial Protection Bureau (CFPB) "issued a civil investigative demand to Seila Law," a California law firm that provided debt-relief services, "direct[ing] Seila Law to produce information and documents related to its business practices." 140 S. Ct. at 2194. "Seila Law asked the CFPB to set aside the demand, objecting that the agency's leadership by a single Director removable only for cause violated the

3

separation of powers." *Id.* The CFPB declined to do so, and Seila Law refused to comply with the directive. *Id.* Thereafter, the CFPB filed suit in district court to enforce the demand. *Id.*

In considering Seila Law's challenge to the statutory removal provision, the lower courts held that the CFPB's structure did not violate the Constitution. *Id.* The Supreme Court, however, concluded that the CFPB's structure—"leadership by a single individual removable only for inefficiency, neglect, or malfeasance"—"violate[d] the separation of powers." *Id.* at 2197. Specifically, the Court observed as follows:

> The CFPB's single-Director structure contravenes this carefully calibrated system [of separation of powers] by vesting significant governmental power in the hands of a single individual accountable to no one. The Director is neither elected by the people nor meaningfully controlled (through the threat of removal) by someone who is. . . . With no colleagues to persuade, and no boss or electorate looking over her shoulder, the Director may dictate and enforce policy for a vital segment of the economy affecting millions of Americans.

*Id.* at 2203–04. The Court further explained that although "several other features of the CFPB combine to make the Directors removal protection even more problematic," "[t]he CFPB Director's insulation from removal by an accountable President [wa]s enough to render the agency's structure unconstitutional." *Id.* at 2204.

One year later, the Supreme Court issued another opinion addressing an agency's structure—the Federal Housing Finance Agency (FHFA). *Collins v. Yellen*, 141 S. Ct. 1761, 1770 (2021). In *Collins*, the Supreme Court reiterated its holding in *Seila Law*, stating "[a] straightforward application of [its] reasoning in *Seila Law* dictate[d] the result here"—that statutory limits on the President's ability to remove the FHFA's director at will violated the Constitution. *Id.* at 1784, 1787.

In light of the foregoing authority, Plaintiff argues that the Social Security Administration's (SSA) structure likewise violates the separation of powers. Compl. 2. In Plaintiff's view, 42

U.S.C. §§ 902(a)(3) and 904(b)(1)(A) "are unconstitutional as they frustrate the necessary separation of powers between the Executive Branch and the Legislative Branch . . . ."[3] Pl.'s Resp. 1, ECF No. 12. Before reaching the merits of Plaintiff's argument, however, the Court must consider whether it has jurisdiction over the claim. *Warth*, 422 U.S. at 500 (noting that "standing in no way depends on the merits of" a claim); *Williams*, 843 F.3d at 620. The Commissioner argues that Plaintiff cannot establish two of the required standing elements—traceability and redressability—thereby destroying jurisdiction and the Court's ability to hear Plaintiff's constitutional claim. Def.'s Mot. 4. The Court weighs the applicable facts and law to determine justiciability.

### A. Traceability

When considering traceability, "the relevant inquiry is whether the plaintiffs' injury can be traced to allegedly unlawful conduct of the defendant, not to the provision of law that is challenged." *Collins*, 141 S. Ct. at 1779 (internal quotation marks omitted). Thus, "[i]n the specific context of the President's removal power, [courts] have found it sufficient that the challenger sustain[s] injury from an executive act that allegedly exceeds the official's authority." *Seila Law*, 140 S. Ct. at 2196 (internal quotation marks omitted); *see Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 968 F.3d 357, 368 (5th Cir. 2020) (defining traceability as requiring "something more than conjecture . . . but less than certainty").

The Commissioner concedes that the requirements for establishing traceability "are not onerous." Def.'s Mot. 5–6. Nevertheless, the Commissioner maintains that Plaintiff cannot meet the test because an ALJ—not the Commissioner—adjudicated her disability claim. *Id.* at 6. Citing

---

[3] Section 902(a)(3) provides, inter alia, that "[a]n individual serving in the office of Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." Under § 904(b)(1)(A), the Commissioner must "prepare an annual budget for the [SSA], which shall be submitted by the President to the Congress without revision, together with the President's annual budget for the [SSA]."

42 U.S.C. § 902(a)(7), the Commissioner asserts that the SSA's "ALJs work under a delegation of authority from the Commissioner . . . , which operates to insulate the ALJ's decision from the Commissioner." *Id.* But as the Commissioner acknowledges, the ALJ's decision "is considered the 'final decision of the Commissioner' for purposes of judicial review." *Id.* (quoting 42 U.S.C. § 405(g)).

Accordingly, "[i]f the removal protections afforded the Commissioner violate the constitutional requirement of separation of powers, the Commissioner has no authority to delegate." *Tafoya v. Kijakazi*, No. 21-cv-00871-REB, 2021 WL 3269640, at *5 (D. Co. July 29, 2021). As Plaintiff asserts, an ALJ is "in effect using the Commissioner's authority on loan, and thus flaws in the Commissioner's authority are flaws in the ALJ's authority." Pl.'s Resp. 2. Whether an ALJ "exercises . . . independent judgment" at the administrative level (Def.'s Mot. 6 (citation omitted)) does not break the "causal connection between [P]laintiff's alleged injury, the denial of [her] benefits application, and the conduct of the Commissioner." *Albert v. Kijakazi*, No. 1:21-cv-0004-HRH, 2021 WL 3424268, at *3 (D. Alaska Aug. 5, 2021).

The Commissioner also contends that Plaintiff cannot establish traceability because the ALJ who decided her disability claim was appointed by an acting Commissioner, who the President could remove at will. Def.'s Mot. 7–8. Section 902(a)(3), however, provides that "[a]n individual *serving in the office of Commissioner* may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." (emphasis added). This section does not distinguish between acting and Senate-confirmed Commissioners. *Dante v. Saul*, No. 20-0702 KBM, 2021 WL 2936576, at *8 (D.N.M. July 13, 2021) (finding that "the plain language of § 902(a) suggests that the Presidential removal restrictions may apply not only to a

Senate-confirmed Commissioner, but also to any individual serving in the office of Commissioner, including an *Acting* Commissioner").

Because the ALJ derives authority directly from the Commissioner, and the ALJ's disability determination becomes the Commissioner's final decision, Plaintiff has sufficiently demonstrated traceability. *Hensley v. Kijakazi*, No. 2:21-cv-00508-VCF, 2021 WL 3472192, at *3 (D. Nev. Aug. 6, 2021); *Albert*, 2021 WL 3424268, at *3; *Tafoya*, 2021 WL 3269640, at *5; *Dante*, 2021 WL 2936576, at *8; *see Seila Law*, 140 S. Ct. at 2196 (explaining that the Supreme Court has "expressly rejected the argument that consideration of the effect of a removal provision is not ripe until that provision is actually used, because when such a provision violates the separation of powers it inflicts a here-and-now injury on affected third parties that can be remedied by a court" (internal quotation marks and alterations omitted)).

### B. Redressability

The Commissioner also avers that "the Court cannot redress the constitutional injury Plaintiff alleges." Def.'s Mot. 8. According to the Commissioner, even if the Court agreed that the SSA's structure violated the separation of powers, it could not adequately redress Plaintiff's purported harm because "a remand predicated on *Seila Law* would result in a new hearing no different from the last." *Id.* at 9. That is, "[a] remand based on Plaintiff's constitutional claim would have no purpose other than issuance of another decision and even if that decision happened to be favorable to Plaintiff, it would have nothing to do with the constitutional violation Plaintiff alleges." *Id.* at 10.

The Commissioner's argument "misconstrues the nature of [P]laintiff's alleged injury, which resides not in the substantive determination per se, but in the fact that it was issued in the ostensible absence of constitutional authority." *Tafoya*, 2021 WL 3269640, at *5; *see Albert*, 2021

WL 3424268, at *5 (reasoning that "the nature of plaintiff's injury is that his application for benefits was denied by an ALJ who was acting without constitutional authority"). "Plaintiff's constitutional claim could be redressed through a new adjudication before an ALJ appointed by a Commissioner stripped of his [or her] removal protections." *Dante*, 2021 WL 2936576, at *10.

The Court finds that Plaintiff's separation-of-powers claim is both traceable and redressable such that she has standing to pursue it. Thus, all of Plaintiff's claims should proceed to briefing on the merits.

## IV.   Recommendation

Based on the foregoing, the undersigned recommends that the United States District Judge **DENY** the Commissioner's Rule 12(b)(1) Motion to Dismiss. Further, the undersigned recommends that the district judge **GRANT** the Commissioner a fourteen-day extension of time in which to file an answer and certified transcript of record in this case.

## V.   Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2019); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district

court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: September 13, 2021.

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE

9